Peelle, Ch. J.,
delivered the opinion of the court:
By section 3 of the act of March 3, 1899, making appropriation for the construction, repair, and preservation of certain public work on rivers and harbors (30 Stat. L., 1121, 1150), the President of the United States was given authority to make full and complete investigation of any and all practical routes for a canal across the Isthmus of Panama with a view to the construction of a canal by the United States across the same to connect the Atlantic and Pacific oceans; and to enable him to make the investigation so authorized he was empowered “ to employ in said service any of the engineers of the United States Army at his discretion, and likewise to employ any engineers in civil life, at his discretion, and any other persons necessary to make such investigation, and to fix the compensation of any and all of such engineers and other persons.”
To defray the expenses necessary to be incurred in making the investigation so authorized there was appropriated out *464 of any money in tbe Treasury not otherwise appropriated the rsum of $1,000,000, “ to be disbursed by order of the President.”
Under and by virtue of the authority of said act the claimant was, on June 10, 1899, informed by John Hay, Secretary of State, that the President had appointed him one of the members of the Isthmian Canal Commission therein provided for, and that he was to be guided in the execution of the trust by the provisions of said act and any line of inquiry which should suggest itself to him in the course of his work as being of interest or benefit.
Later, June 21,1899, the Secretary of State communicated to the claimant the instructions which had been approved by the President for the guidance of those so appointed, and the compensation of the members of said commission was fixed at $1,000 per month, and the usual traveling expenses authorized by law, with a provision that if the work should be completed in less than ten months they should receive each $10,000 as compensation for the period of their employment; and while so employed outside of the United States they were to be allowed in addition to their necessary and actual traveling expenses $5 per day as personal expenses while engaged in the work to which they were assigned. Said instructions also provided that “the approval of the president of the commission shall be final authority for all expenditures.”
The act did not purport to create an office, nor can it be held to have so operated. The President was thereby authorized to employ at his discretion engineers from the United States Army or from civil life, and any other person necessary to make such investigation. The employment authorized by the act was for services to be rendered in connection with the investigation to ascertain the most practical and economical route for a canal across the Isthmus of Panama, and hence the basis of pay under the act was for duties performed in connection therewith.
The letter of the Secretary of State advising the claimant that the President had appointed him one of the members of the Isthmian Canal Commission was simply the method adopted to inform the claimant that he, with others, had *465 been employed by the President to make an investigation of the most practical route for a canal across the Isthmus of Panama, and that in such investigation he, with others likewise employed, was to be guided in the execution of the trust by the provisions of said act. The instructions issued by the Secretary of State, and which were approved by the' President, were in conformity with the purpose of the act. The duties performed by the claimant were not as an officer of the army, but as an employee under the act authorizing his employment. Had the duties been performed by him as an officer of the army he would have no claim under the act of March 3, 1899. The authority to employ engineers in the army, as well as engineers from civil life, was to secure competent men. Appointments were authorized from these two classes evidently because Congress considered that men appointed therefrom possessed the requisite qualifications for the investigation so authorized to be made.
Under the act the whole power of employment, as well as the means and method of making the investigation, and the compensation for the service rendered were lodged in the President.
Under said employment the claimant was on duty at different times prior to March 26,1903, for which he was paid, the last of such duties being performed from January 16 to 18, 1902.
The purpose of the act as indicated by Secretary Hay in his letter of employment — set forth in Finding I — was that the claimant and his associates would so fulfill the important duties confided to them that when their report was prepared it would embrace all the elements required for the guidance of the President, as well as for the final action of Congress upon the subject of the location and construction of the inter-oceanic canal.
The investigation thus authorized by the act of March 3, 1899, appears to have been sufficient both for the guidance of the President and the final action of Congress, as, by the act of June 28, 1902 (32 Stat. L., 481), Congress provided “ for the construction of a canal connecting the waters of the Atlantic and Pacific oceans,” and therein, by section, 7, created *466 “ the Isthmian Canal Commission,” to be composed of seven members, to be nominated and appointed by the President, by and with the consent of the Senate, to serve until the completion of said canal, unless sooner removed by the President.
It would therefore seem that any further action on the part of the President under the act of March 3, 1899, was at an end, and that any future work in and about the canal was to be under the direction of the commission created by the act of June 28, 1902; but for the purposes of this case it is not necessary to determine whether the latter act repealed or superseded the former, and we will therefore determine the case without reference to that question.
On March 26, 1903, the claimant and two others were employed by the President “ to visit the Isthmus of Panama without unnecessary delay to ascertain the present condition of the work on the canal, * * * to arrange for its continuance, and to determine the amount of work done, after some date to be agreed upon, for which the French Panama Canal Company should be reimbursed with fair and reasonable compensation therefor; in other words, to make the necessary inspection and calculations so as to be able to certify to the correctness of any bills to be paid for work done by the canal company.”
The claim before the court is for the period from the date of his employment, March 26, 1903, to March 10, 1904, less the time occupied in going to and returning from the Isthmus from April 9 to May 8, 1903, both inclusive, for which he was paid.
The claimant contends, and Finding III shows, that from March 28 to April 8,1903 he was actually engaged in organizing and arranging the outfit, instruments, and supplies to be taken to the Isthmus for use in the investigation they were employed to make. Finding IV also shows that after the claimant’s return from the Isthmus May 8, 1903, he assisted in the preparation of the report which was made to the President May 22, 1903.
For the time occupied in the preparation for the trip, as aforesaid, as well as for the time assisting in the preparation of the report to the President, the claimant was denied com *467 pensation on the theory that the services under his employment did not begin until he started on the trip to the Isthmus and ended on his return. But the findings show that the claimant was engaged in making preparation for the trip as well as assisting in the preparation of the report to the President, and we think it fairly comes within the purpose of his employment. It was certainly necessary that the result of the trip should be made known, and to that end the report to the President was necessary. Hence we hold that while so engaged the claimant was on duty under his employment and is entitled to be paid therefor at the rate of $1,000 per month, less any sum received by him as an officer of the army.
True, the time consumed both in the preparation for the trip as well as in the preparation of the report seems disproportionate to the time consumed in going to and returning from the Isthmus. But we can not assume that the gentlemen so employed for the important commission acted otherwise than in good faith, nor is there any contention to the contrary.
However, when the report was made and the claimant was not assigned to further duty by the President in connection with the investigation or work on the canal, he was bound to know that he had thereby ceased to be on duty under said employment, especially as in said report it is stated that they had “ completed the duty assigned.” Nor did he thereafter by authority of the President perform any duty whatever in connection with said employment.
The act of March 3,1899, did not create, as the act of June 28, 1902, did, a commission to perform the work, but left it with the President to employ; and the mere designation by the President of those so employed as constituting the Isthmian Canal Commission did not operate to create said commission or to give those so employed any official character, except to acquaint the President with the most practical and economical route for a canal across the Isthmus. The claimant’s employment under the act was for a special purpose; and when he and his associates had made a report to the President the purpose of their employment therewith ended, and hence no compensation can be allowed for any time subsequent to the making of the report to the President.
*468 True, on March 10, 1904, the claimant was informed by-direction of the President that the work of the Isthmian Canal Commission had been completed and the commission was dissolved, but the court can not construe that as operating to give the claimant a prior duty status in connection with the canal. Prior thereto the claimant was informed by the Secretary of State, through Admiral Walker, president of the so-called commission, under date of August 29, 1901, that “ when the report of the Isthmian Canal Commission shall have been practically completed ” he was authorized to place the members of said commission on furlough without pay, and thereafter when the report was made to the President on May 22, 1903, it was the duty of said Walker at that time to have furloughed the claimant without pay, but his failure to carry out the instructions of the Secretary of State can not be construed as detrimental to the United States, and of this the claimant was bound to take notice and be governed accordingly.
The claimant’s report to the War Department from time to time that he was on duty under the employment of the President in connection with the Canal Commission was simply in conformity with the regulations of the War Department, and treating the so-called commission as continuing until dissolved March 10, 1904, no duties were performed by the claimant, and without the performance of some service compensation can'not be awarded under the act. Therefore the claimant is not entitled to recover for the time between the making of the report to the President and March 10. 1904.
The distinction between this and the cases cited by the claimant, in support of his contention that the claimant is entitled to compensation while waiting assignment to duty, is that here the claimant was not an officer under the act, and could not have been, as the act did not create an ofB.ce, while the cases cited by the claimant are applicable only to officers. Those cases can have no application here if we are correct in our view that the claimant, under the act of his employment, was - not an officer. If we were to accept the claimant’s view that the claimant was an officer of the army in the performance of the duties and for the period of time *469 for which he claims pay, when no duties were performed, then as such officer has he not been paid? But considering him as entitled to compensation under the act authorizing his employment we must hold that such compensation was authorized only for the period of time actually employed. And this was the view of the President in declining to pay the claimant for the period during which he performed no service.
Our conclusion is that the claimant is entitled to recover for the period of service rendered from March 28 to April 8, 1903, and from May 9 to May 22, 1903, as set forth in Finding V, the sum of $431.94, being at the rate of $1,000 per month less the amount received by him as an officer of the Army during the same period, for which judgment is ordered to be entered. For the residue of the claim no allowance can be made.